IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| HELEN HOLLAND, Individually, on behalf of herself and on behalf of all other similarly situated current and former employees,<br><br>    Plaintiffs,<br><br> v.<br><br>FULENWIDER ENTERPRISES, INC., a North Carolina Corporation, PHOENIX TACO, L.L.C., a North Carolina Limited Liability Company, MICHAEL FULENWIDER, an Individual, TOM HIRUNPUGDI, an Individual, and ERSKINE WHITE, an Individual,<br><br>    Defendants. | C.A. No.: 1:17-cv-00048-MOC-DLH |

**JOINT MOTION FOR SETTLEMENT APPROVAL
AND DISMISSAL WITH PREJUDICE**

Plaintiff Helen Holland ("Holland" or "Named Plaintiff") and Opt-In Plaintiffs Shannon Scott, Shirley Cruz, Demetria Carter, Tim Green, Tinika Lee, Donyetta Simms, Deborah Weister, and Antwain Paulings ("Opt-In Plaintiffs") (collectively, "Plaintiffs"), and Defendants Fulenwider Enterprises, Inc., Phoenix Taco, L.L.C., Michael Fulenwider, Tom Hirunpugdi, and Erskine White ("Defendants" and, together with Plaintiffs, the "Parties") jointly move for approval of the settlement agreement reached between Plaintiffs and Defendants (the "Settlement Agreement"). The Parties further jointly move the Court to dismiss this action in its entirety with prejudice. In furtherance of this motion, the Parties jointly state:

1

1. Plaintiffs, who are former salaried Assistant Managers employed by Fulenwider Enterprises or Phoenix Taco, have alleged that Defendants violated the Fair Labor Standards Act ("FLSA") by classifying them as exempt from overtime compensation and not paying them an overtime premium for hours worked in excess of forty per week. Court sponsored notice of this collective action was mailed to current and former assistant managers and 17 chose to opt in to the collective. Several of these individuals who opted have been dismissed.[1]

2. Defendants deny Plaintiffs' claims and assert that Plaintiffs are not owed any overtime or other pay. Specifically, Defendants contend that Plaintiffs were properly classified as exempt from overtime under the executive and administration exemptions of the FLSA as determined by the Department of Labor during previous audits of Defendant's operations. If this case were to be further litigated, Defendants would also seek decertification of the collective action. Defendants would also dispute in any further litigation the amount of overtime allegedly worked, individual liability, liquidated damages, willfulness (*i.e.*, extension of the statute of limitations period), Plaintiffs' method of calculating damages, and the reasonableness of Plaintiffs' attorneys fees and costs.

3. To avoid further litigation costs, Defendants and Plaintiffs have agreed to settle the claims in this lawsuit. Defendants and Plaintiffs have agreed to the Settlement Agreement, which will take effect following the Court's approval and will bind *only the Plaintiffs* and no

---

[1] The Consent of Christie Rushing was withdrawn by Plaintiff (Dkt. 4). The Consent of Laura Land was also withdrawn by Plaintiff (Dkt. 61). The claims of Belinda Oliver, Claudia Richardson, Cody Arnold and Amanda Valasquez were voluntarily dismissed after those individuals failed to respond to discovery (Dkt. 66). The claims of Karia Cunningham, Rebecca Townsend, and Shondrea Parker were dismissed by Stipulation (Dkt. 67 and 71).

other current or former employees of Defendants.[2] All Parties are represented by experienced and competent counsel and the Parties engaged in *significant* arms-length negotiations following substantial informal and formal discovery on the Plaintiffs' claims and Defendants' defenses. Specifically, the Parties and their counsel interviewed potential witnesses, exchanged documents and information (including payroll records, time records, personnel documents, email correspondence, and various other documents related to the duties of Plaintiffs), and deposed and defended depositions of the Named Plaintiff and four Opt-In Plaintiffs. In addition, counsel for the Parties have discussed at considerable length Plaintiffs' assertions and Defendants' defenses, and their respective legal theories and proof, in support of their positions. Plaintiffs have fully evaluated every aspect of their claims and recognize the risk they face in further litigation. Plaintiffs are also aware of the delayed risk associated with any appeal of the outcome in this case.

4. This settlement was negotiated during mediation mandated by the Court. The Parties engaged a mediator who is experienced in FLSA litigation, made detailed presentations regarding their respective positions, and carefully considered the risks associated with further litigation in reaching this settlement.

5. The Parties recognize and acknowledge the expense and length of continued proceedings necessary to litigate decertification of a collective action, summary judgment, trial, and potential appeals. The Parties and their counsel also have taken into account the uncertain outcome and the risk of any further litigation, as well as the difficulties and delays inherent in

---

[2] This case was filed as a "collective action" under the FLSA. In a collective action, individuals must affirmatively opt in to be bound by the judgment and, when they do so, they become an actual "party plaintiff" to the action. 29 U.S.C. § 216(b). Hence, "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis HealthCare Corp. v. Symczyk,* 133 S. Ct. 1523, 1529 (2012). Here, the settlement is only for those who have opted in to this date, and will not affect the rights of absent parties.

such litigation. Plaintiffs and Plaintiffs' counsel are mindful of the inherent problems of proof and the existence of potentially adverse evidence that Defendants may use to discredit and defend against Plaintiffs' claims. The Parties assert it is desirable and beneficial that Plaintiffs' claims be fully and finally settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.

6. The Parties agree that the terms of the Settlement Agreement are fair and equitable considering the disputed issues and the time, expense, and burden required by continued litigation. The Parties agree that the terms of the Settlement Agreement were negotiated at arms-length with all Parties being fairly and fully represented by counsel of their choosing. Each Plaintiff and Opt-In Plaintiff agreed to the terms of the Settlement Agreement after speaking with Plaintiffs' counsel, asking questions and reviewing calculations and analyses. Each Plaintiff is in the process of signing the Settlement Agreement.

7. The Settlement Agreement is also fair and equitable because the amounts apportioned to the different Plaintiffs take into account the length of employment and amount of overtime hours allegedly worked by each Plaintiff and Opt-In Plaintiffs, as well as the strengths and weaknesses of their respective claims.

8. Plaintiffs assert that the amount of attorneys' fees and costs is also reasonable. As a condition of settlement and to avoid continued litigation, Defendants take no position on this issue and do not oppose the requested award of attorneys' fees of $2,500 and expenses and costs of $9,001.89. The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Plaintiffs' Counsel represents that the amount of attorneys' fees reflects less than the actual lodestar that Plaintiffs' incurred in

prosecuting this litigation, including time spent drafting pleadings, communicating with Plaintiffs, interviewing witnesses, reviewing documents, performing discovery, defending depositions, drafting a motion for conditional certification, and engaging in settlement discussions.

9. The specific terms of the Settlement are set forth in the Settlement Agreement which will be separately submitted to the Court. Plaintiffs' counsel is in the process of obtaining signatures on the Settlement Agreement for each Claimant. The Parties request permission to submit the Settlement Agreement to the Court for *in camera* review and approval. If the Court is amenable to *in camera* review, the Parties will submit the executed Agreement to Chambers.

10. The Parties jointly agree and propose to the Court that their Settlement Agreement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores,* 679 F.2d 1350, 1355 (11th Cir. 1982). Because the Settlement Agreement is a fair and equitable compromise of a bona fide dispute, Defendants and Plaintiffs request that the Court approve the Settlement Agreement and enter a final judgment dismissing the case, in its entirety, with prejudice. An Agreed Order and Final Judgment, approved by the Parties, are being submitted with this Motion.

INCORPORATED MEMORANDUM OF LAW

The Parties are seeking this relief from the Court because the federal Fair Labor Standards Act ("FLSA") requires either Court approval or Department of Labor supervision to perfect a valid release of FLSA claims. 29 U.S.C. § 216(b) and (c). *See Lynn's Foods Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). Section 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the employer's payment of unpaid wages is supervised by the Secretary of Labor. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores*, 679

F.2d at 1353. In the context of a private lawsuit brought by an employee against his or her employer under Section 216(b) of the FLSA, as in the present case, an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement and the district court enters a stipulated judgment after approving the fairness of the settlement. *Id.* If a settlement in an employee FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

Although the Fourth Circuit has not directly addressed the factors relevant to settlement approval in an FLSA collective action, courts within the Circuit have followed the analysis of *Lynn's Food Stores*, which essentially established four factors for a district court to examine to determine whether to approve a FLSA settlement:

1. Was the settlement achieved in an adversarial context?

2. Was the Plaintiff represented by attorneys who can protect her rights?

3. Does the settlement reflect a reasonable compromise over issues that are actually in dispute?

4. Is the settlement fair?

*Id.* at 1353-54.³ A district court, when reviewing a proposed settlement of a FLSA claim must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair

---

³ Other circuits have identified the following factors to consider in determining whether a settlement is fair and reasonable: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement. *Int'l Union, United Auto, Aerospace and Agr. Implement Workers of Am. v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007). The Court may choose to consider only those factors it considers relevant to the settlement at hand, and often, "inquiry into one factor necessarily overlaps with inquiry into another." *In re Cincinnati Policing,* 209 F.R.D. 395, 400 (S.D. Ohio 2002). The Court is not

and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Id.* at 1353, 1355. Courts within the Fourth Circuit have applied this standard and approved other FLSA settlements in recent years. *See, e.g., Irvine v. Destination Wild Dunes Mgmt.*, 204 F. Supp. 3d 846, 849 (D.S.C. 2016) (applying *Lynn's Foods* standard and approving FLSA settlement of collective action); *Davis v. Louis Broadwell, LLC*, Case No. 2:10-2947-RMG, 2013 U.S. Dist. LEXIS 201494 (D.S.C. Mar. 13, 2013) (same).

"In reviewing FLSA settlements under *Lynn's Food*, courts should be mindful of the strong presumption in favor of finding a settlement fair." *Parker v. Chuck Stevens Chevrolet of Atmore, Inc.*, 2013 U.S. Dist. LEXIS 102633, 2013 WL 3818886, *2 (S.D. Ala. July 23, 2013) (citations and internal quotation marks omitted). Such deference is warranted because "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement" and "[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009).

I. <u>Application of Approval Factors</u>

    A. *<u>The Settlement Was Achieved In An Adversarial Context</u>.*

This case has been aggressively litigated throughout its history. As detailed below, Plaintiffs are represented by experienced counsel, with specific experience litigating disputes regarding FLSA exemptions in the restaurant industry. Defendants have vigorously disputed liability providing evidence that assistant managers spend the majority of their time engaged in management duties, as well as prior Department of Labor determinations supporting the

---

required to determine if the settlement is the fairest possible resolution of the claims of each plaintiff, but rather whether the settlement taken as a whole is fair, adequate, and reasonable. *UAW v. General Motors Corp.,* 2006 U.S. Dist. LEXIS 14890, 2006 WL 89115 at *15 (E.D. Mich. March 31, 2006), *aff'd* 497 F.3d 615 (6th Cir. 2007).

7

applicability of the exemption. As detailed in Section 1.c below, there is a bona fide dispute regarding the existence of any liability and the parties have forcefully presented their positions regarding that dispute.

B. *Plaintiffs Have Been Represented by Competent And Experienced Counsel*

As stated above, Plaintiffs' Counsel have litigated or arbitrated similar misclassification claims across the country, including cases within this District. In fact, Plaintiffs' counsel have achieved numerous victories on various critical issues, FLSA conditional certification, and the applicability of various FLSA exemptions. Plaintiffs' counsel have specifically litigated cases affecting assistant managers in the restaurant industry.

Through this experience, Plaintiffs' counsel have become very familiar with industry practices and the issues involved in litigating these cases. Plaintiffs' attorneys are fully aware of the factual contentions of their clients and are in the best position to opine as to whether this settlement produces fair results after consideration of risks. Defendants produced payroll, timekeeping and other documents to Plaintiffs' counsel during the course of settlement discussions, and Plaintiffs' counsel analyzed and thoroughly reviewed that information in light of their experience in dozens of nearly identical collective actions and industry standards. The Parties negotiated vigorously, but each side believes that they have reached a final settlement amount that adequately compensates Plaintiffs for the claims asserted. Plaintiffs may get nothing if this case were to be dismissed at summary judgment or in the event of an adverse decision in arbitration.

C. *The Settlement Reflects A Reasonable Compromise Over Issues That Are Actually In Dispute.*

Plaintiffs are former Assistant Managers for Defendants. The Complaint alleges that Defendants have misclassified Plaintiffs as exempt Managers and unlawfully failed to pay them

overtime. There is no dispute that Assistant Managers are paid more than $455 per week and were paid on a salary basis. Not only is there a bona fide dispute under the FLSA regarding possible liability, Plaintiffs face significant obstacles to establishing any liability in this case:

- As discussed in greater detail below, many of the Plaintiffs conceded in depositions that they exercised significant management authority;

- The restaurants are open more than 100 hours per week and Assistant Managers are frequently the only managers on site and are fully responsible for managing the restaurants;

- Court-approved notice in this case was sent to all putative members of the collective; however, only 17 former assistant managers chose to opt in. Defendants contend that this low response rate demonstrates that assistant managers believe they are properly classified;

- The Department of Labor has determined during previous on-site investigations that the Assistant Managers are properly classified as exempt;

- The Supreme Court's recent decision in *Encino Motorcars*, 138 S.Ct. 1134 (2018), eliminates the "narrow construction" principle previously applied to exemptions and increases plaintiff's burden of proof; and

- Defendants reclassified all Assistant Managers to nonexempt hourly employees in late 2016 in anticipation of the Department of Labor's announced plan to increase the salary threshold to $913 per week. Any possibility of liability in this case after that date is, therefore, precluded by this decision.

Defendants contend that the duties of Assistant Managers are clearly and overwhelmingly managerial in nature (Rushing Dep. 46:19-47:24; Ex. 4 to Holland Dep.; Scott Dep. 17:16-18:2;

9

Ex. 6 to Scott Dep.; McLean Decl. ¶¶ 6-19, 21-22.) In fact, the testimony of the Plaintiffs established that they spend a significant period of time performing clearly management duties. Specifically, among other duties, Assistant Managers: interview, hire, discipline, and terminate employees (Holland Dep. 84:21-85:10, 86:22-87:2; Scott Dep. 54:17-55:21; Johnston Decl. ¶¶ 7-10); set employees' work schedules, send employees home, and ask them to report to work (Hernandez-Cruz Dep. 66:1-4; McLean Decl. ¶ 18(c)); distribute work assignments to employees (McLean Decl. ¶ 14; Smalls Decl. ¶ 15; Moore Decl. ¶ 15-16); supervise employees to ensure that they meet company performance standards and comply with company policies (Rushing Dep. 52:24-53:14; Carter Dep. 27:19-28:2; Wilson Decl. ¶¶ 4-5, 7-8); monitor and ensure compliance with food safety standards (Hernandez-Cruz Dep. 48:25-49:2; Pridgen Decl. ¶ 2); monitor inventory, sales, and other measures of a restaurant's financial performance (Rushing Dep. 15:15-23, 18:18-20:6, 41:24-42:9, 44:15-16, 48:14-25, 49:6-50:7; Wilson Decl. ¶ 3); conduct meetings with subordinate employees (Scott Dep. 24:1-10; Howell Decl. ¶ 16(h)); lock and unlock the restaurant each day with keys issued to them (Holland Dep. 61:1-15, 70:21-71:20); access the restaurant's safe (Carter Dep. 52:10-20; Smalls Decl. ¶ 18(h)); authorize the purchase of items used in the restaurant (Smalls Decl. ¶ 17(a); Moore Decl. ¶ 18(c); Pope Decl. ¶ 16(d)); and address and resolve customer complaints (Scott Dep. 45:15-46:1; Johnston Decl. ¶ 16(c); Cousar Decl. ¶ 5).

Plaintiffs' claims are severely undermined by the fact that multiple Opt-In Plaintiffs and 11 current and former Assistant Managers of Defendants' restaurants who provided sworn Declarations testified that they primarily performed exempt job duties:

- **Assistant Managers were routinely solely responsible for the management of the restaurant.** (Holland Dep. 39:17-19; Rushing Dep. 47:25-48:7; Carter Dep. 30:3-22; Hernandez-Cruz Dep. 40:1-41:10; Johnston Decl. ¶¶ 5-6; Smith Decl. ¶¶ 6, 10; Howell Decl. ¶ 6; Smalls Decl. ¶¶ 4-5.)

- **Assistant Managers had the authority to interview, hire, discipline, and fire employees unilaterally.** (Holland Dep. 84:21-85:10, 86:22-87:2; Rushing Dep. 12:20-14:6, 14:19-15:2, 20:7-14, 25:3-5, 54:8-22, 58:9-59:9; Scott Dep. 54:17-55:21; Ex. 5 to Scott Dep.; Ex. B to Mingo Decl.; McLean Decl. ¶¶ 7-10; Smalls Decl. ¶¶ 6-9; Moore Decl. ¶¶ 10-13; Pope Decl. ¶¶ 7-10; White Decl. ¶¶ 5-11.)

- **Assistant Managers set employees' work schedules and could send employees home or direct them to report to work without any oversight or approval.** (Holland Dep. 63:18-20; Rushing Dep. 42:19-43:13, 50:8-17, 54:23-55:1; Carter Dep. 35:11-16; Scott Dep. 7:15, 19:25-20:10, 51:10-52:2, 56:21-57:13; Hernandez-Cruz Dep. 41:19-24, 42:8-19; McLean Decl. ¶ 18(c).)

- **Assistant Managers were responsible for supervising cashiers, cooks, and other non-exempt hourly employees.** (Holland Dep. 80:16-19; Carter Dep. 53:4-14; Scott Dep. 41:9-15; Cousar Decl. ¶¶ 4-5, 7-9.)

- **Assistant Managers always supervised at least two full-time employees because it took at least three hourly employees to operate the restaurant, and Assistant Managers sometimes supervised as many as ten on a given shift.** (Carter Dep. 33:10-34:16; Scott Dep. 48:12-17; Johnston Decl. ¶ 12; Moore Decl. ¶ 18(d); McLean Decl. ¶ 12.)

- **Assistant Managers responsible for keeping sales and inventory records, and ordering food and other supplies as needed.** (Holland Dep. 69:5-25, 70:17-20; Rushing Dep. 15:15-23, 18:18-19:4, 48:14-22, 49:6-25; Scott Dep. 19:21-24, 25:22-26:6; Hernandez-Cruz Dep. 47:14-21; Ex. 12 to Holland Dep.; Smith Decl. ¶¶ 15(a), (h).)

- **Assistant Managers were provided keys, the combination to the restaurant's security system, and the combination to the safe of the restaurants where they worked, and were responsible for unlocking the restaurant at the beginning of each day and/or locking it at the end of each day.** (Holland Dep. 61:1-15, 70:21-71:20; Rushing Dep. 62:1-14; Scott Dep. 57:14-21; Hernandez-Cruz Dep. 43:17-22; McLean Decl. ¶ 18(k); Smalls Decl. ¶ 17(h); Moore Decl. ¶ 18(k).)

- **Assistant Managers were responsible for correcting the timecards of hourly employees who forgot to clock in or out.** (Holland Dep. 55:2-56:14; Rushing Dep. 52:24-53:14, 60:24-61:20; Carter Dep. 38:24-39:13; Scott Dep. 60:5-61:10; Exs. 5-7 to Holland Dep.)

- **Assistant Managers also earned bonuses based on the financial performance of the restaurant(s) where they worked, while non-exempt hourly employees**

**were not eligible for bonuses.** (Holland Dep. 47:19-48:17; Carter Dep. 31:16-18; Scott Dep. 35:9-36:1.)

After her employment with Phoenix Taco ended, Holland applied for employment with Bojangles' Restaurants, Inc. ("Bojangles"). Holland stated in her application for employment at Bojangles that her duties as an Assistant Manager at Phoenix Taco's KFC locations included:

- "assign[ing] employees to specific duties;"
- "[d]irect[ing] and supervis[ing] employees;"
- enforcing Phoenix Taco's safety, health, and security rules; and
- "[h]ir[ing], train[ing], and evaluat[ing] personnel" and maintained records. (*Id.*)

By signing the application on September 8, 2015, Holland attested that the information she provided was "true, accurate and complete."

For the numerous reasons outlined above, a bona fide dispute exists as to Defendants' liability under the FLSA, and Plaintiffs would face significant obstacles to establishing any liability at trial if this case survives summary judgment.

D. *The Settlement Is Fair and Reasonable*

As outlined above, Plaintiffs face significant obstacles to establishing any liability in this case The outcome of a trial the merits could have been no recovery. Even if Plaintiffs could establish liability, each still faced considerable obstacles in proving both the fact and amount of damages, which would require analysis of extensive payroll records and documentation.

Given the challenges faced by Plaintiffs to establish *any* liability, the negotiated settlement amount is fair and reasonable. The settlement amount is also apportioned based upon the number of weeks worked during the relevant time by each individual Plaintiff. Lesser recoveries in FLSA claims are routinely approved by federal courts around the nation. *See, e.g., Jimenez v. Pizzerias, LLC*, 2017 U.S. Dist. LEXIS 129820, *11 (S.D. Fla. Aug. 14) (approving

settlement of same claim equivalent to approximately two-thirds of the maximum value of actual damages. *Fuentes Cordova v. R&A Oysters, Inc.*, 2016 U.S. Dist. LEXIS 123042, *2-3 (S.D. Ala. Sept. 12) (finding settlement constituting 50% recovery of wages (actual damages) as estimated by expert report to be fair and reasonable); *Vigna v. Emery Fed. Credit Union*, 2016 U.S. Dist. LEXIS 166605, at *3 (S.D. Ohio Dec. 2, 2016) ("The Court agrees that nearly all of the terms of the Settlement are fair and reasonable, particularly in light of the fact that the total Settlement Fund constitutes a 55% recovery of wages [alone, not liquidated damages] as estimated by the expert's report.").

Consequently, this settlement provides a certain result and value now, as opposed to a speculative result that may occur years from now. The substantial benefit that will be received by the claimants immediately and made certain by the settlement is a significant factor weighing in favor of the Court's approval of the proposed settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 326 (N.D. Ga. 1993) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, 'it has been held proper to take the bird in the hand instead of a prospective flock in the bush.'"). Thus, the settlement is a fair and reasonable resolution of a bona fide dispute.

2. <u>Attorneys' Fees and Costs</u>

Plaintiffs' counsel is seeking only a portion of the fees expended in this matter. The costs sought by Plaintiffs are reasonable and specifically supported by contemporaneous records.

Plaintiffs' counsel will receive the portion allocated as attorneys' fees, costs, and expenses as their sole compensation for the work done on this case. Thus all fee and cost obligations will be satisfied by the parties' settlements. *Id.*

## **CONCLUSION**

Thus, for the reasons discussed above, Plaintiffs and Defendants respectfully request that this Court enter an Order approving the Settlement Agreements and dismissing this case with prejudice.

Respectfully submitted this the 4th day of April, 2019.

| | |
|---|---|
| *s/ J. Russ Bryant* | s/ *John W. Sulau* |
| Gordon E. Jackson (admitted pro hac vice) | John W. Sulau (N.C. Bar No. 47171) |
| E-mail: gjackson@jsyc.com | E-mail: john.sulau@jacksonlewis.com |
| J. Russ Bryant (admitted pro hac vice) | Ellison F. McCoy (admitted pro hac vice) |
| E-mail: rbryant@jsyc.com | E-mail: mccoye@jacksonlewis.com |
| Paula Jackson (admitted pro hac vice) | D. Christopher Lauderdale (admitted pro hac vice) |
| E-mail: pjackson@jsyc.com | E-mail: lauderdc@jacksonlewis.com |
| JACKSON SHIELDS YEISER & HOLT | T. Chase Samples (admitted pro hac vice) |
| 262 German Oak Dr. | E-mail: chase.samples@jacksonlewis.com |
| Memphis, TN 38018 | JACKSON LEWIS P.C. |
| | 15 South Main St., Suite 700 |
| Christopher R. Strianese (N.C. Bar No. 46918) | Greenville, SC 29601 |
| Tamara L. Huckert (N.C. Bar No. 35348) | Telephone: 864-232-7000 |
| STRIANESE HUCKERT, LLP | |
| 401 North Tryon Street, 10th Floor | ATTORNEYS FOR DEFENDANTS |
| Charlotte, NC 28202 | |
| chris@strilaw.com | |
| tamara@strilaw.com | |
| | |
| ATTORNEYS FOR PLAINTIFF | |

**CERTIFICATE OF SERVICE**

I certify that on April 4, 2019, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF System and automatically copied to all Counsel of Record.

s/ *John W. Sulau*
John W. Sulau (N.C. Bar No. 47171)
